# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

ROBERTA A. SPELATZ,                                Case No. 3:10-CV-06191-SI

                        Plaintiff,                 **OPINION AND ORDER**

v.

**MICHAEL J. ASTRUE,** Commissioner
of Social Security,

                        Defendant.


KATHRYN TASSINARI
Drew L. Johnson P.C.
1700 Valley River Drive
Eugene, OR  97401

        Of Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

KATHRYN A. MILLER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Of Attorneys for Defendant

**SIMON, District Judge.**

Roberta A. Spelatz ("Ms. Spelatz") brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits (DIB). This court has jurisdiction under 42 U.S.C. § 405(g).

The Commissioner twice has issued final decisions denying Ms. Spelatz's application since she initially applied for DIB more than a decade ago. Tr. 7-9, 58-60, 432D-432M. She appeared before the District Court once before, and her case has reached the United States Court of Appeals for the Ninth Circuit. Tr. 443-48. In her present action, she alleges that the Commissioner's most recent decision erroneously failed to account for the severity of her mental impairments and improperly discredited her hearing testimony. The court agrees that the Commissioner failed to adequately address Ms. Spelatz's mental impairments at steps two and four of the five-step sequential disability determination process. The Commissioner, however, provided specific, clear, and convincing reasons to discredit portions of Ms. Spelatz's testimony. Accordingly, the decision of the Commissioner is reversed and the case remanded to the Commissioner for further proceedings consistent with the instructions herein.

## I. BACKGROUND

Ms. Spelatz worked for ten years as a massage therapist and, more recently, for two years as a receptionist. Tr. 93. On September 6, 2001, at the age of 57, she applied for DIB, alleging disability since February 15, 2000. Tr. 58-60.

### A.    Procedural History

The Commissioner denied Ms. Spelatz's application initially and on reconsideration.

Page 2 – OPINION AND ORDER

Tr. 42-45, 49-51. Ms. Spelatz requested a hearing before an Administrative Law Judge ("ALJ").
Tr. 52. ALJ John J. Madden Jr. held a hearing on April 7, 2004, and issued a decision denying
Ms. Spelatz's claim on June 15, 2004. Tr. 337-51, 387-424. The Commissioner's Appeals
Council, however, vacated that decision and remanded for further proceedings in September
2004. Tr. 357-59. ALJ Madden held a second hearing on May 12, 2005, and issued a new
decision again denying her claim on October 25, 2005. Tr. 427-432, 436-42. The Appeals
Council declined review and the decision became final. Tr. 7-9.

Ms. Spelatz sought review in the District Court. The District Court affirmed the
Commissioner, *Spelatz v. Astrue*, No. CV-06-06118-HA (D. Or. Nov. 7, 2007), and Ms. Spelatz
appealed to the Ninth Circuit. In an unpublished memorandum decision issued on April 8, 2009,
the Ninth Circuit reversed and remanded to the Commissioner for further proceedings.  Tr. 443-
48; *Spelatz v. Astrue*, No. 08-35103, 321 Fed. Appx. 689, 2009 WL 965901 (9th Cir. April 8,
2009).

Following the Ninth Circuit's reversal, a third hearing was held on April 1, 2010, this
time before ALJ Marilyn S. Mauer. Tr. 540-44. ALJ Mauer issued a third decision denying
Ms. Spelatz's claim on April 14, 2010. Tr. 432D-432M. The regulations provide that "when a
case is remanded by a Federal court for further consideration, the decision of the administrative
law judge will become the final decision of the Commissioner after remand . . . unless the
Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). The Appeals Council
did not assume jurisdiction, and, accordingly, ALJ Mauer's decision became the final decision of
the Commissioner. *See Petty v. Astrue*, 550 F.Supp.2d 1089, 1096 (D. Ariz. 2008) ("Because . . .
the Appeals Council has not assumed jurisdiction on its own motion, the ALJ's decision denying

[the claimant's] request for benefits constitutes a final decision for purposes of Section 405(g) jurisdiction."). Ms. Spelatz then sought review in this court.

**B.    Medical and Other Evidence**

To establish that she is disabled and eligible for benefits, Ms. Spelatz "must produce complete and detailed objective medical reports of her condition from licensed medical professionals." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R. § 404.1513(a). She may "use evidence from other sources to show the severity of [her] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 404.1513(d). Ms. Spelatz alleges that she is disabled on the basis of lumbar degenerative disc disease, fibromyalgia, depression, and personality disorder. Pl.'s Br. 4.

Dr. Stephan Schepergerdes treated Ms. Spelatz at the alleged onset of her disability. His treatment notes show intermittent reports of pain, numbness, stress, fatigue, and depression. Tr. 201-18, 315-25. Following a visit in September 2001, Dr. Schepergerdes noted that Ms. Spelatz's "paracervical muscles [are] somewhat tender" and she experienced tension headaches. Tr. 202. He did not record any reports of serious pain or numbness. Tr. 202. A record from January 2002 notes potential degenerative disc problems, but does not list reports of significant pain, stress, or depression. Tr. 201. Following a visit four months later, Dr. Schepergerdes observed that Ms. Spelatz's fibromyalgia had been "much worse over the last" six months. Tr. 325. He also recorded that Ms. Spelatz had some "increased home stress" and that she took "chronic short naps." Tr. 325. In February 2003, Ms. Spelatz reported dizziness and nausea, as well as seasonal allergies, but did not report neck or back pain, numbness, stress, or depression. Tr. 318.

In a letter to the Social Security Administration, Dr. Schepergerdes, provided a capsule summary of his assessment of Ms. Spelatz's condition. Ms. Spelatz, he wrote,

> has a longstanding history of a tendency to intermittently disabling migraine headaches and has constant muscle aches and fatigue due to fibromyalgia. She has constant family stress worsening her depression, which worsens her longstanding insomnia. Again, these combined conditions result in chronic daytime fatigue, poor stamina and lack of concentration. In addition[,] Roberta has chronic low back pain due to degenerative disc disease. Her feet are intermittenly numb during the day constributing to occasional imbalance. Her hands go numb overnight, a side effect of her prior cervical spinal stenosis requiring a one level fusion in June, 2002.
>
> In spite of taking almost no narcotic pain medication, the combination of the two antidepressants and an intermittent use of a mild tranquilizer along with her medications contributes to her fatigue, lack of stamina and concentration difficulties. I do not feel that she has the physical stamina required to meet the Social Security definition of gainful employment. Tr. 332.

In a follow-up letter, Dr. Schepergerdes explained that "[i]t is my opinion that it is not one individual impairment, but the combination of all of them which would not allow [Ms. Spelatz] to be gainfully employed[.]" Tr. 333.

Dr. Glenn Keiper met with Ms. Spelatz on January 24, 2002, to conduct a neurosurgical consultation. Tr. 283-86. Ms. Spelatz described neck and lower back pain that is "getting worse." Tr. 283. The neck pain "radiates from her neck into occipital area" and "keeps her from doing any of her normal activities out in the yard[.]" Tr. 283. Her lower back pain "is continuous." Tr. 283. Dr. Keiper reviewed two MRIs conducted earlier in the month. Tr. 285. A cervical spine MRI revealed "posterior bulging of the disc which narrows the neural foramen bilaterally and touches the spinal cord. There is significant anterior spurring as well." Tr. 285. An MRI of the lumbar spine showed "slight degeneration of the disc space" but was otherwise normal. Tr. 285. Dr. Keiper diagnosed cervical spondylosis and lumbar pain. Tr. 285. When Ms. Spelatz asked

about her DIB claim, Dr. Keiper noted that he "would not participate in rating her for Social Security. At the present time I do not see her as disabled based on the findings of her MRI and physical exam." Tr. 286.

In June 2002, Ms. Spelatz had "anterior cervical discectomy and fusion" surgery to address her neck pain and headaches. Tr. 313. According to Dr. Keiper's records, following the surgery, Ms. Spelatz reported that "her headaches have completely resolved." Tr. 312. Four months after the surgery, she reported no arm or neck pain and Dr. Keiper recorded that "Ms. Spelatz is free to return to all of her normal activities without restriction." Tr. 311.

Sharon Beickel, Ph.D, performed a psychological evaluation on Ms. Spelatz on April 12, 2002. Tr. 248. Ms. Spelatz "had labile affect throughout and cried several times in discussing her current life situation[.]" Tr. 251. She described her mood as "very depressed." Tr. 251. Although she has no history of suicide attempts, Ms. Spelatz reported that she "has many thoughts of suicide and has a plan to take pills[.]" Tr. 251. Dr. Beickel found that there "may be some malingering involved though it is certainly not conscious on Ms. Spelatz's part. She does not exaggerate her symptoms and truly feels desperate." Tr. 252. Dr. Beickel diagnosed dysthymic disorder with strong situational factors, including pain and difficulties with her stepson. Tr. 254. Dr. Beickle concluded that Ms. Spelatz was "severely depressed and has many suicidal thoughts with a plan to take pills which she has stockpiled." Tr. 254.

Licensed Social Worker Gail Richards saw Ms. Spelatz one to three times each month from June 2001 until January 2002. Tr. 229. She reported that Ms. Spelatz "presents with severe depression and high levels of stress." Tr. 230. Ms. Spelatz "reports that many days she has difficulty doing anything due to fatigue and pain[.]" Tr. 230. Richards concluded that

Page 6 – OPINION AND ORDER

"Ms. Spelatz presents as a very emotionally fragile, physically impaired woman who has minimal skills to manage the high stress of her life." Tr. 231.

In addition to revealing suicidal ideation to Dr. Beickel, Ms. Spelatz disclosed similar thoughts to: Dr. Schepergerdes; Richards; physical therapist Paul Shoemaker; and family friend Edward Summers. In March 2001, Ms. Spelatz reportedly told Dr. Schepergerdes, "[j]ust give me some pills and let me end it all." Tr. 205. She made a similar comment to Shoemaker during a session in August 2001. Tr. 191. She repeatedly mentioned suicide to Richards. Tr. 241, 243. Summers noted that Ms. Spelatz feels a "sense of" worthlessness. Tr. 197.

## C.    Ms. Spelatz's Testimony

Ms. Spelatz has testified at three hearings since she applied for DIB, although only the first hearing recorded significant and relevant testimony. Tr. 387-424, 427-32, 540-44. Ms. Spelatz stated that her 83 year-old mother took care of her. Tr. 400. She testified that "[w]ith my leg going numb so often and my fingers and hands going numb so often, and the general aching with my fibromyalgia, I do my share of the housecleaning . . . in sp[u]rts. Fifteen, 20 minutes and I have to sit down and let the leg get the feeling back into it or just plain old rest." Tr. 401.  She also testified to a diminished ability to engage in yard work and gardening: "And now I can't, I can't do it. I go out for 15 or 20 minutes . . . I . . . work a little bit at pulling weeds or putting a new plant in and then I have to go in and lay down or stretch out in my recliner chair." Tr. 401. When asked why she did not engage in exercise as part of treatment for fibromyalgia, Ms. Spelatz said that exercise "aggravates the problems with my leg of going numb." Tr. 402.

Ms. Spelatz testified to performing some activities of daily living, such as preparing

Page 7 – OPINION AND ORDER

meals, vacuuming, and laundry. Tr. 406-07. She reported, however, that she disliked driving, and

that her mother did all of the grocery shopping. Tr. 407. She also reported that she had to lay

down several times each day and that she frequently had to stop and rest when performing

physical activities. Tr. 401, 406-09.

According to Ms. Spelatz, her headaches "were so bad that I was continually in bed with

them." Tr. 403. She explained that she no longer socialized with a women's group because "I

can't be on my legs as long as" they can. Tr. 404. She explained that she could not work because

"most employers . . . expect you to be able to say that you can be there every day and I can't say

that. I can't go eight hours in an office, even with sitting up or standing for a while. I still need to

go and lay down. I nap at least once or twice a day. I mean, I get to the point I can't stay awake."

Tr. 404-05.

## D.    The 2004 ALJ Decision

Following the 2004 hearing, ALJ Madden issued a decision denying Ms. Spelatz's

application. Tr. 337-51. ALJ Madden applied the five-step sequential disability determination

process set forth in 20 C.F.R. § 404.1520. Under the five-step process, if the ALJ finds that a

claimant is or is not disabled at any particular step, the analysis concludes and a determination is

made. If, however, the ALJ cannot conclude whether the claimant is disabled at any given step,

then the ALJ proceeds to the next step. In the first four steps, the burden of proof rests upon the

claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The first step of the five-step sequential disability determination process considers a

claimant's work activity. If a claimant is "doing substantial gainful activity," the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4)(i). ALJ Madden found that Ms. Spelatz satisfied step one.

Tr. 341.

The second step of the disability determination ascertains whether the claimant has a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step two, ALJ Madden found that Ms. Spelatz suffered from several severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, and situational depression not otherwise specified. Tr. 348.

The third step also considers the medical severity of the impairments and asks whether the impairments meet or equal one or more of the listings set forth in 20 C.F.R. Pt. 404, Subpt. P, Appx 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairments meet or equal one of the listed impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). ALJ Madden found that Ms. Spelatz's impairments were "not 'severe' enough to meet or medically equal . . . one of the" listed impairments. Tr. 348.

At the fourth step, the ALJ considers whether the claimant, in light of her impairments, can still perform her past relevant work. If she can, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If she cannot, the ALJ will proceed to the fifth and final step. Here, the ALJ considers whether the claimant can perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). At this final stage of the analysis, the burden shifts to the Commissioner to establish that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Terry*, 903 F.2d at 1275.

The fourth and fifth steps require the ALJ to determine how the claimant's impairments affect her ability to perform work. To make this determination, the ALJ formulates the claimant's residual functional capacity ("RFC"). An RFC "is the most [the claimant] can still do despite [his

Page 9 – OPINION AND ORDER

or her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC "is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p.[1] ALJ Madden found that Ms. Spelatz retained an RFC to perform "light work that does not involve more than occasional climbing ropes and scaffolds, or stooping or crawling. She can reach overhead on an occasional basis." Tr. 350. He did not include any mental limitations in Ms. Spelatz's RFC.

Once the ALJ has formulated the claimant's RFC, he must consider whether the claimant can, in light of that RFC, perform past or other work. To do so, the ALJ may rely on the testimony of a vocational expert ("VE"). 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 404.1566(e). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988). In response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

ALJ Madden called a VE to testify at the hearing. Tr. 420-22. ALJ Madden posed two separate sets of hypothetical assumptions to the VE: "One is pretty much a full range of light work with some limitations. And the other is from Dr. [Schepergerdes] saying no stamina to

---

[1] The Commissioner publishes rulings to clarify the Social Security Administration's regulations and policy. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (*en banc*). Although they do not carry the force of law, SSRs are binding on ALJs. *Bray v. Comm'r*, 554 F.3d 1219, 1224 (9th Cir. 2009).

sustain work." Tr. 421. The VE responded that a claimant who was capable of performing a full range of light work with some limitations could work as a receptionist, an office helper, or a file clerk. Tr. 421-22. If, however, the claimant's medical conditions forced her to lie "down for twice a day, for at least a half hour," like Ms. Spelatz described in her testimony, the VE concluded that the claimant would not be capable of any work. Tr. 422.

Based on his determination that Ms. Spelatz retained an RFC to perform light work with some limitations, ALJ Madden adopted the VE's response to his first set of hypothetical assumptions. He explained that in "response to a hypothetical based on the claimant's vocational factors and residual functional capacity, the [VE] testified that the claimant could return to her past relevant work as a receptionist." Tr. 350. Accordingly, he found that Ms. Spelatz did not meet her burden at step four because her impairments "do not prevent [her] from performing her past relevant work." Tr. 351. ALJ Madden concluded that Ms. Spelatz was not disabled. Tr. 351.

E.    **Appeals Council Remand and the 2005 ALJ Decision**

The Social Security Administration Appeals Council vacated ALJ Madden's decision and remanded Ms. Spelatz's claim for further proceedings. Tr. 357-60. On remand, the Appeals Council required that ALJ Madden resolve two issues. First, the Appeals Council noted that ALJ Madden found, at step two, that Ms. Spelatz "has a mental impairment that results in mild restrictions of activities of daily living [and] moderate difficulties in maintaining social functioning[.]" Tr. 358. But the "decision did not consider the indicated nonexertional limitations or their effect, if any, on the claimant's maximum residual functional capacity." Tr. 358. On remand, the Appeals Council instructed the ALJ to give "further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references

to evidence[.]" Tr. 358.

Second, the Appeals Council found that the ALJ did not "give reasons germane to each witness for discounting or rejecting" the testimony and evidence from third-party, lay witnesses, including Ms. Spelatz's mother and husband, and her friend, Summers. Tr. 358. On remand, the Appeals Council directed the ALJ to address "lay witness testimony and statements in accordance with requirements established" by the Ninth Circuit. Tr. 359.

ALJ Madden issued a new decision in 2005 addressing both issues identified by the Appeals Council. Tr. 433-42. Rather than incorporate Ms. Spelatz's mental impairments into an assessment of her maximum RFC, ALJ Madden reversed his finding that Ms. Spelatz's suffered from severe mental impairments at all. He attributed his finding in the 2004 decision that Ms. Spelatz suffered from mental limitations to a "technical, writing error." Tr. 439. Ms. Spelatz, he found in his new decision, "has only mild difficulty with daily living activities, social functioning, concentration, persistence, and pace. . . . Indeed, she has no severe mental impairment." Tr. 439.

Regarding the lay witness testimony, ALJ Madden briefly considered the testimony and evidence of Ms. Spelatz's mother, husband, and friend, Summers. He attributed some weight to their testimony, but did not, in particular, credit their assessments that Ms. Spelatz had limited capacity to perform most activities of daily living.  Tr. 439-40.

ALJ Madden again found that Ms. Spelatz retained an RFC to perform light work and concluded again that she was not disabled. Tr. 441-42. Following this decision, the Appeals Council declined further review and the decision became final. Tr. 7-9. Ms. Spelatz sought review in the District Court, which affirmed ALJ Madden's decision. *Spelatz v. Astrue*, No. CV-

Page 12 – OPINION AND ORDER

06-06118-HA (D. Or. Nov. 7, 2007).

## E.    Ninth Circuit Memorandum Decision

Ms. Spelatz appealed to the Ninth Circuit. In an unpublished memorandum decision, the
Ninth Circuit reversed. Tr. 443-48. The Court identified two errors. First, it rejected ALJ
Madden's reassessment of Ms. Spelatz's mental impairments in which he concluded that she had
no severe mental impairment. To the contrary, the Ninth Circuit noted, the examining
psychologist, Dr. Beickel, and the social worker, Richards, both found that Ms. Spelatz suffered
from severe depression. Tr. 445. Moreover, the Ninth Circuit stated that "the ALJ failed to
explain adequately why he altered his original conclusion that [Ms. Spelatz's] depression was a
severe impairment; the change was not a 'technical writing error' but was, instead, substantive."
Tr. 445.

The Ninth Circuit also reversed ALJ Madden's finding, made in both the 2004 and 2005
decisions, that Ms. Spelatz's hearing testimony was not credible. Tr. 445-46. ALJ Madden, the
Court found, failed to perform the two-step credibility analysis set out in *Cotton v. Bowen*, 799
F.2d 1403 (9th Cir. 1986) (per curiam) and *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.
1996). Based on those two errors, the Ninth Circuit remanded the case to the Commissioner.

## F.    2010 ALJ Decision

Following the remand, a new ALJ, Marilyn Mauer, issued a third decision. Tr. 432D-
432M. ALJ Mauer followed the five-step sequential analysis required by the Social Security
Administration regulations. As in ALJ Madden's 2005 decision, ALJ Mauer found that
Ms. Spelatz's alleged mental impairments were neither "severe," according to the analysis
required at step two, nor relevant to the formulation of her RFC, according to the procedure set

Page 13 – OPINION AND ORDER

out in step four. Ms. Spelatz's mental impairments, ALJ Mauer wrote, "did not cause more than minimal limitation in [her] ability to perform basic mental work activities and were therefore non-severe." Tr. 432G. Accordingly, ALJ Mauer concluded that Ms. Spelatz was not disabled. Tr. 432L-432M.

### 1.   Severity of Ms. Spelatz's mental impairments at step two

To find that Ms. Spelatz's mental impairments were "non-severe" at step two, ALJ Mauer applied the "special technique" set forth in 20 C.F.R. § 404.1520a. Tr. 432G. To apply this technique, "the reviewer must determine whether the applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis[.]" *Keyser v. Comm'r*, No. 10-35371, 2011 WL 2138237 *2 (9th Cir. June 1, 2011) (internal citations omitted).   The four functional areas are "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The degree of functional limitation is rated on a five-point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4).

ALJ Mauer first determined that Ms. Spelatz suffered from medically determinable mental impairments of "dysthymic disorder with strong situational factors, dyssomnia, adjustment disorder with depressed mood, and personality disorder [not otherwise specified.]" Tr. 432G. ALJ Mauer then rated the degree of functional limitation those mental impairments imposed on Ms. Spelatz.

In the first area, ALJ Mauer found that "Ms. Spelatz had no limitation" in the activities of

Page 14 – OPINION AND ORDER

daily living. Tr. 432G. Ms. Spelatz reported "being able to perform household chores, go shopping for food, and prepare meals for her family[.]" Tr. 432G. In the second area, social functioning, ALJ Mauer found that Ms. Spelatz had mild limitation. ALJ Mauer noted that Ms. Spelatz described herself as an "introvert," but remarked that she also "stayed in touch with her four surviving children" and appeared "'cooperative' upon examination in April 2002." Tr. 432G. In the third area, ALJ Mauer found that Ms. Spelatz had no limitation in concentration, persistence, or pace. ALJ Mauer observed that Ms. Spelatz demonstrated "logical thinking," normal understanding, and persistence during mental testing at an examination in April 2002. Tr. 432G. In the fourth area, ALJ Mauer found that Ms. Spelatz had no reported episodes of decompensation. Tr. 432G. Based on those findings, ALJ Mauer concluded that because "Ms. Spelatz'[s] medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fouth area, they were non-severe." Tr. 432G.

## 2.    Effect of Ms. Spelatz's mental impairments on her RFC at step four

ALJ Mauer also found that Ms. Spelatz's mental impairments imposed no limitations on her RFC. Tr. 432H. In so finding, ALJ Mauer reached the same conclusion reached by ALJ Madden in both his 2004 and 2005 decisions. ALJ Mauer reviewed evidence submitted by Ms. Spelatz's friend, Summers, her social worker, Richards, and evaluating psychologist Dr. Beickel. She also reviewed the reports of psychological consultants Peter LeBray, Ph.D, and Bill Hennings, Ph.D. ALJ Mauer decided that Summer's opinion was entitled to no weight and Richards and Dr. Beickel's opinions were entitled to "partial weight." Tr. 432K. She afforded great weight to the psychological consultants. Tr. 432K.

Page 15 – OPINION AND ORDER

Discussing Edwards and Richards, ALJ Mauer noted that neither was a licensed physician or psychologist. Tr. 432J. She found that both based their assessments of Ms. Spelatz's "pain and emotional stress" on Ms. Spelatz's own reports and noted that those reports were not fully supported by objective medical findings. Tr. 432K. With respect to Edwards, ALJ Mauer wrote that his "conclusory opinion is outside his area of expertise and is reserved to the Social Security Commissioner." Tr. 432K.

Turning to Dr. Beickel, ALJ Mauer observed that her "report largely focuses on the situational stressors within Ms. Spelatz'[s] home, rather than in a work setting." Tr. 432K. With respect to Ms. Spelatz's suicidal ideation, ALJ Mauer determined that "such symptoms" were tied to Ms. Spelatz's relationship with her stepson. Tr. 432K. ALJ Mauer gave "partial weight to Dr. Beickel's assessment to the extent it supports the conclusion that Ms. Spelatz'[s] medically determinable mental impairments impose no more than mild limitation on her ability to perform basic work activities." Tr. 432K. Based in part on the partial weight she accorded to Dr. Beickel and Richards, ALJ Mauer concluded that Ms. Spelatz's mental impairments "did not cause more than minimal limitation in [Ms. Spelatz's] ability to perform basic mental work activities." Tr. 432G.

### 3.    Ms. Spelatz's credibility

Like ALJ Madden, ALJ Mauer also found portions of Ms. Spelatz's hearing testimony not credible. In particular, ALJ Mauer rejected a statement that Ms. Spelatz made during the 2010 hearing, where she claimed, for the first time, to have been fired from her job as a receptionist because she "was so terribly depressed I had mood swings. . . . [The boss] said I was not a good people person." Tr. 542. ALJ Mauer explained that "[n]o corroborating evidence or

Page 16 – OPINION AND ORDER

testimony was offered to support her assertion. Her self-serving testimony offered for the first time at her third hearing is simply not credible." Tr. 432I.

ALJ Mauer also found that Ms. Spelatz's "pain symptoms are not as disabling as she alleges." Tr. 432J. In reaching this finding, ALJ Mauer identified several reasons to question Ms. Spelatz's testimony. She observed that Ms. Spelatz's "subjective complaints are not fully supported by the objective medical findings contained within the evidence of record[.]" Tr. 432I. In addition, ALJ Mauer noted that Ms. Spelatz did not seek frequent medical treatment for back pain. Tr. 432J. Further, ALJ Mauer noted that Dr. Keiper had stated that Ms. Spelatz "had a normal gait and full range of motion in all extremities." Tr. 432J. Finally, ALJ Mauer observed that Ms. Spelatz "was able to cope with her pain symptoms without any prescription pain medication[.]" Tr. 432J.

## II. STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## III. DISCUSSION

In her brief to the court, Ms. Spelatz identifies two alleged errors: (1) the ALJ erroneously

failed to included her mental impairments at steps two and four of the sequential analysis; and (2)

the ALJ filed to give clear and convincing reasons for rejecting her hearing testimony. Pl.'s Br.

19, 25. Regarding Ms. Spelatz's first alleged error, the court agrees that the ALJ failed

adequately to consider Ms. Spelatz's mental impairments at steps two and four. With respect to

the second alleged error, however, the court finds that the ALJ provided clear and convincing

evidence for discrediting Ms. Spelatz's testimony.

A.     **Ms. Spelatz's Mental Impairments**

Ms. Spelatz first argues that ALJ Mauer erred in failing to include her mental

impairments at steps two and four of the sequential analysis. As described above, ALJ Mauer

found that Ms. Spelatz suffered from medically determinable mental impairments, but she

decided that those impairments did not affect Ms. Spelatz's ability to work: "Ms. Spelatz'[s]

medically determinable mental impairments of dysthymic disorder with strong situational factors,

dyssomnia, adjustment disorder with depressed mood, and personality disorder NOS, considered

singly and in combination, did not cause more than minimal limitation in her ability to perform

basic mental work activities and were therefore non-severe." Tr. 432G.  Accordingly, ALJ Mauer

concluded at step two of the sequential analysis that Ms. Spelatz's mental impairments were not

severe. Tr. 432G. At step four, the ALJ concluded that Ms. Spelatz's mental impairments were

not significant enough to warrant inclusion in Ms. Spelatz's RFC or to be posed in a hypothetical

to a VE. Tr. 432L. Neither conclusion is supported by substantial evidence.

Ms. Spelatz argues that ALJ Mauer's decision was driven by her credibility evaluations of

Dr. Beickel and Richards. If Dr. Beickel and Richards are "properly credited, their opinions

establish that [Ms. Spelatz's] work would be significantly affected by her emotional problems,

such that her memory, persistence, and social functioning would be affected." Pl.'s Br. 25.

Ms. Spelatz is correct. ALJ Mauer's decision to minimize Ms. Spelatz's mental impairments

depended in part on the diminished weight she accorded to the opinions of Dr. Beickel and

Richards. Accordingly, before turning to an analysis of ALJ Mauer's conclusions at steps two

and four, the court considers the ALJ's evaluation of the evidence from Dr. Beickel and

Richards.

### 1.    Evaluations of Dr. Beickel and Richards's opinions

#### a.    Standards

An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §

404.1527(d), (f). Opinions from "acceptable medical sources" – such as licensed medical doctors

and psychologists – may generally be accorded more weight than those from "other sources" –

such as social workers, family, and friends. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert.*

*denied*, 519 U.S. 881 (1996); 20 C.F.R. § 404.1513. An ALJ may wholly or partially discount the

opinion of any source, but the regulations and Ninth Circuit case law have established specific

standards an ALJ must apply in order to do so. *See* 20 C.F.R. § 404.1527 (standards for

evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830-33 (9th Cir. 1995) (standards

for evaluating acceptable medical sources); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.

1993) (standards for evaluating other sources).

The standards for evaluating the opinion of an acceptable medical source, such as a

licensed psychologist like Dr. Beickel, differ depending on the extent of contact the source had

with the claimant and whether the source is contradicted by other sources in the record. *Lester*,

81 F.3d at 830-33. In general, an ALJ should "give more weight to the opinion of a source who

Page 19 – OPINION AND ORDER

has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 404.1527(d)(1). An ALJ may, however, reject the opinion of a doctor who has examined the claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied sub nom.*, *Roberts v. Chater*, 517 U.S. 1122 (1996). The standard is more exacting if no medical opinion contradicts an examining doctor's opinion. Then, the ALJ may only reject the examining doctor's opinion only if she provides "'clear and convincing' reasons" for doing so. *Lester*, 81 F.3d at 830 (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

An ALJ must also consider evidence and testimony from "other sources" concerning "a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Family members, like Ms. Spelatz's mother and husband, who are "in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. Moreover, the opinions of licensed medical professional, such as social workers like Richards, "are important and should be evaluated on key issues such as impairment severity and functional effects[.]" SSR 06-03p. Accordingly, an ALJ may not disregard testimony from other sources "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

With the lone exceptions of Dr. Hennings and Dr. LeBray, the reviewing psychologists who did not personally evaluate Ms. Spelatz, ALJ Mauer wholly or partially discounted the reports of nearly every source who addressed Ms. Spelatz's mental impairments. Tr. 432J-432L. In particular, the ALJ gave only "partial weight" to the opinions of Dr. Beickel and Richards.

Tr. 432K. Her assessment of the evidence from Dr. Beickel and Richards is important because both personally evaluated Ms. Spelatz and both concluded that she was severely depressed. ALJ Mauer did not provide sufficient reasons to discount either conclusion.

### b.     Dr. Beickel

ALJ Mauer gave "partial weight to Dr. Beickel's assessment to the extent it supports the conclusion that Ms. Spelatz'[s] medically determinable mental impairments impose no more than mild limitation on her ability to perform basic work activities." Tr. 432K. ALJ Mauer based her evaluation of Dr. Beickel's opinion on two factors.

First, she observed that "Dr. Beickel's report largely focuses on the situational stressors within Ms. Spelatz's home, rather than in a work setting." Tr. 432K. This observation is not a reason to discount Dr. Beickel's report. Since Ms. Spelatz was not working at the time of the evaluation – and had not worked for two years – Dr. Beickel cannot be faulted for failing to report "situational stressors" not relevant to her subject's circumstances.[2]

Second, ALJ Mauer found that Ms. Spelatz's mental symptoms, reported by Dr. Beickel, were tied to her relationship with her stepson: Ms. Spelatz's symptoms of severe depression and suicidal thoughts "began when her stepson came to live with" her. Tr. 432K. As with the first factor, however, ALJ Mauer's contention that Ms. Spelatz's symptoms are "situation specific"

---

[2] ALJ Mauer makes much of the fact that Dr. Beickel's report does not consider Ms. Spelatz's social functioning outside of her home. She writes, for example, that "there is no indication that Ms. Spelatz'[s] mental symptoms significantly limit her social functioning outside of her immediate family." Tr. 432K. But the record makes clear that Ms. Spelatz rarely leaves her home and has few friends. Rather than serve as a reason to discount Dr. Beickel, or any other source, this evidence suggests that Ms. Spelatz's mental impairments limit her social functioning: "[E]vidence that an individual is markedly withdrawn or seclusive suggests a greatly reduced capacity for close contact and interaction with other people." SSR 85-16.

does not provide a reason to discount Dr. Beickel's medical opinion. Dr. Beickel's report clearly

tied Ms. Spelatz's mental impairments to her living situation: Dr. Beickel diagnosed Ms. Spelatz

with dysthymia "with [s]trong [s]ituational [f]actors." Tr. 254. In short, ALJ Mauer's reasons for

discounting Dr. Beickel's opinion are neither clear and convincing nor supported by substantial

evidence. They do not provide a basis to accord Dr. Beickel's opinion only "partial weight."

      **c.**     **Richards**

      Turning to Richards, ALJ Mauer afforded her opinion only "partial weight . . . insofar as

it documents Ms. Spelatz'[s] pain complaints over time." Tr. 432K. ALJ Mauer discounted

Richards's opinion for two reasons. First, she noted that "Ms. Richards is [not] a licensed

physician or psychologist[.]" While an ALJ may afford less weight to other sources as compared

to medically acceptable sources, the mere fact that Richards is not a doctor is not a reason to

diminish the credibility of her opinion. As noted above, the Social Security Administration has

held that the opinions of health care professionals such as social workers "are important and

should be evaluated on key issues such as impairment severity and functional effects[.]" SSR 06-

03p.

      Second, ALJ Mauer found that Richards's "assessment of Ms. Spelatz's pain and

emotional stress is apparently based entirely on her own report, which . . . is not fully supported

by objective medical findings." Tr. 432K. Richards's assessment of Ms. Spelatz was based on

treatment sessions occurring one to three times per month from June 2001 until at least January

2002. Tr. 229-44. In some cases, Richards repeated Ms. Spelatz's comments in her notes. But

Richards's opinion of Ms. Spelatz's condition appears to be based not entirely on Ms. Spelatz's

self-report, as ALJ Mauer asserts, but on the basis of her own observations made over many

months. Tr. 232-44. Moreover, Richards's opinion is not an outlier. Her conclusion – that

Ms. Spelatz suffers from severe depression and is emotionally fragile – is corroborated by both

Dr. Beickel and Dr. Schepergerdes. Tr. 332, 527. Neither factor identified by ALJ Mauer is a

germane reason to discount Richards's opinion. ALJ Mauer erred in evaluating the weight to give

both Dr. Beickel and Richards.

## 2.        Step two analysis

The second step of the sequential analysis requires the ALJ to determine "whether the

claimant has a medically severe impairment or combination of impairments." *Bowen*, 482 U.S. at

140-41. A severe impairment is one that "significantly limits [the claimant's] physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment can be "found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual[']s ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

1996) (quoting SSR 85-28). The "step-two inquiry is a de minimis screening device to dispose

of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

The Commissioner has developed a "special technique" for evaluating the severity of

mental impairments. 20 C.F.R. § 404.1520a(a). That technique requires the ALJ to "rate the

[claimant's] degree of functional limitations in four areas: activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation." *Hoopai v.*

*Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007). If the ALJ rates the claimant's "limitation in the

first three functional areas as 'none' or 'mild' and 'none' in the fourth area," the Commissioner

"will generally conclude that [the claimant's] impairment(s) is not severe[.]" 20 C.F.R. §

404.1520a(d)(1). The regulations require the ALJ to provide a rating and written assessment in

each functional area, but do not require "specific findings of the claimant's functional limitations." *Hoopai*, 499 F.3d at 1078.

As explained above, ALJ Mauer made findings in each of the four functional areas. Her ratings in the first three areas are not supported by substantial evidence. In the first, activities of daily living, ALJ Mauer found that "Ms. Spelatz had no limitation." In particular, ALJ Mauer noted that Ms. Spelatz could "perform household chores, go shopping for food, and prepare meals[.]" Tr. 432G. ALJ Mauer's rating of "no limitation" is not supported by substantial evidence. Contrary to ALJ Mauer's rating, Dr. Beickel reported that Ms. Spelatz "has had a loss of functioning over the past year." Tr. 253. Dr. Beickel observed that Ms. Spelatz's mother does most of the shopping and food preparation and that Ms. Spelatz no longer attends a social group. Tr. 253. Both Ms. Spelatz's husband and her mother noted that she rarely prepared meals, did not get any exercise, did not participate in social activities, and only left the house on weekends. Tr. 122-27, 167-71. Even the non-examining, consulting psychologists, Dr. Hennings and Dr. LeBray, to whom ALJ Mauer afforded "great weight," found that Ms. Spelatz suffered a "mild" degree of limitation in this area.[3] Tr. 267, 301, 432K.

In the second functional area, social functioning, ALJ Mauer concluded that "Ms. Spelatz had mild limitation." Tr. 432G. In support of this assessment, ALJ Mauer noted that Ms. Spelatz stayed in touch with her children, was cooperative upon examination, and demonstrated adequate interpersonal skills. This evidence, however, is not substantial when considered within the context of the complete record. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)

---

[3] Dr. Hennings and Dr. LeBray did not provide written explanations for their findings, but merely checked boxes under each of the four functional areas. Both checked the "mild" box for the first functional area.

(the fact that disability claimant experiences some positive indications does not necessarily mean claimant's impairments are not serious when considered in context). Although Dr. Beickel noted that Ms. Spelatz had "adequate" interpersonal skills, she also noted that Ms. Spelatz "had labile affect throughout [the examination] and cried several times in discussing her current life situation[.]" Tr. 251. Richards wrote that "Ms. Spelatz presents as a very emotionally fragile . . . woman who has minimal skills to manage the high stress of her life." Tr. 231. Ms. Spelatz's family reported that she participated in no social activities. Tr. 122, 168. Dr. Beickel, Dr. Schepergerdes, Richards, Summers, and Shoemaker all reported that Ms. Spelatz had threatened suicide. Tr. 191, 197, 205, 243, 251.

While both Dr. Hennings and Dr. LeBray indicated that Ms. Spelatz had only mild limitations in social functioning, Tr. 267, 301, the Ninth Circuit made clear that in light of all the evidence, those conclusions could not be relied on: The "record does not support the non-examining psychologists' conclusions. Both Dr. Beickel, the examining psychologist, and Gail Richards, Claimant's therapist, reported that Claimant suffers from severe depression." Tr. 445. Indeed, in his first decision, ALJ Madden rated Ms. Spelatz's limitations in social functioning as "moderate." Tr. 348. In light on the entire record, substantial evidence does not support ALJ Mauer's conclusion that Ms. Spelatz has only mild limitations in social functioning. *See Holohan*, 246 F.3d at 1207 ("reviewing physician who merely checked boxes without giving supporting explanations" is insufficient to outweigh the opinion of a treating doctor).

The third functional area is concentration, persistence, and pace. ALJ Mauer found that Ms. Spelatz had "no limitation" in this area. She noted that Ms. Spelatz was "fully oriented" during an examination, "demonstrated a 'moderately good' memory and fund of knowledge,"

and "demonstrated logical thinking[.]" Tr. 432G. Again, however, in the context of the complete record, substantial evidence does not support ALJ Mauer's finding of "no limitation." Dr. Beickel wrote that Ms. Spelatz's "memory shows some impairment[.]" Tr. 252. Richard noted that Ms. Spelatz had trouble concentrating. Tr. 229. Dr. Schepergerdes wrote that Ms. Spelatz experienced "chronic daytime fatigue, poor stamina and lack of concentration" and opined that she did not have the "physical stamina required to meet the Social Security definition of gainful employment." Tr. 332. Even the reviewing psychologists, Dr. Hennings and Dr. LeBray, found that Ms. Spelatz had mild limitations in this area. Tr. 267, 301. In light of the full record, substantial evidence does not support ALJ Mauer's finding of no limitation.

The fourth and final functional area is episodes of decompensation. "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, Appx 1, § 12.00C(4). ALJ Mauer found that Ms. Spelatz had not experienced episodes of decompensation. The record supports that finding.

Upon review of the record, the court concludes that substantial evidence does not support ALJ Mauer's conclusion, at step-two of the sequential analysis, that Ms. Spelatz's mental impairments are not severe. Dr. Beickel, who evaluated Ms. Spelatz, and Richards, who treated her over many months, both found that Ms. Spelatz suffered from severe depression. On remand, the Commissioner should consider that evidence, the other evidence discussed above, and the entirety of the record.

### 3.    Step four analysis

At step four of the sequential analysis, an ALJ decides whether a claimant can, on the basis of her RFC, perform past relevant work. ALJ Mauer found that Ms. Spelatz could perform "a range of light work on a sustained and competitive basis[.]" Tr. 432L. She assessed no limitations based on Ms. Spelatz's medically determinable mental impairments. Ms. Spelatz argues that this was error and that ALJ Mauer "should have included Plaintiff's mental limitations . . . in the residual functional capacity assessment and in the hypothetical question presented to the VE[.]" Pl.'s Br. 24. The court agrees. Medical professionals, as well as family and friends, reported that Ms. Spelatz is severely depressed and suicidal, has poor social skills and a limited ability to concentrate, and is chronically fatigued.

Mental impairments are part of the RFC assessment.  20 C.F.R. § 404.1545(a)(4). In the event that a mental impairment is severe, according to the step two analysis, but does not meet or equal the listings in 20 C.F.R. Pt. 404, Subpt. P, Appx 1, § 12.00 according to the step three analysis, "the determination of mental RFC is crucial to the evaluation of [a claimant's] capacity to do substantial gainful activity[.]" 20 C.F.R. Pt. 404, Subpt. P, Appx 1, § 12.00A. In SSR 85-16, the Commissioner described the issues that must be "considered when an individual with a mental impairment requires an assessment of the residual functional capacity . . . in order to determine the individual's capacity to engage in basic work-related activities." Those issues include depression, withdrawn behavior, anxiety, tension, activities of daily living, and the ability to relate to others. SSR 85-16.

As explained above, once an ALJ has developed a claimant's RFC, the ALJ may pose hypothetical questions to a VE in order to determine whether the claimant is capable of her past

Page 27 – OPINION AND ORDER

or other work. *Osenbrock*, 240 F.3d at 1162. Just as the claimant's RFC must include all of a claimant's impairments,  "[h]ypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis*, 236 F.3d at 517 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). In the event that an ALJ's hypothetical question fails to account for all the claimant's impairments, the "opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The evidence, explicated in detail above, suggests that Ms. Spelatz suffers from mental impairments, including severe depression, that at least moderately limits her social functioning. Ms. Spelatz's depression, as well as her relationship with her family and inability to complete some activities of daily living, are the types of issues identified in SSR 85-16 as potentially affecting a claimant's ability to engage in "basic work-related activities." Accordingly, ALJ Mauer erred in failing to include those limitations in Ms. Spelatz's RFC and in hypothetical questions posed to the VE.

The court concludes that Commissioner erroneously discounted the opinions of Dr. Beickel and Richards, and based its findings at steps two and four on less than substantial evidence. On remand, the Commissioner is instructed to re-evaluate the weight accorded to Dr. Beickel's report. The Commissioner should either give the report full weight or provide clear and convincing reasons for finding it less than fully credible. The Commissioner is also instructed to re-evaluate Richards's evidence and either give it full weight or provide germane reasons for finding it less than fully credible. The Commissioner is further instructed to reassess the severity of Ms. Spelatz's mental impairments under step two in light of all the evidence and

especially the evidence discussed herein. Finally, the Commissioner is instructed to properly account for Ms. Spelatz's mental impairments when formulating her RFC and in the hypothetical questions posed to the VE.

**B.    Ms. Spelatz's Credibility**

**1.    Standards**

Ms. Spelatz also argues that ALJ Mauer failed to give clear and convincing reasons for discrediting much of her hearing testimony. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting affect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Further, the ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81 F.3d at 834.

Both the Social Security Administration and the Ninth Circuit have set forth a variety of tools that an ALJ may use to assess a claimant's credibility. In SSR 96-7p,[4] the Commissioner recommended assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms.

In addition to the factors identified in SSR 96-7p, the Ninth Circuit has said that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

### 2.    Ms. Spelatz's testimony

ALJ Mauer made two primary credibility findings concerning Ms. Spelatz's hearing testimony. First, ALJ Mauer rejected Ms. Spelatz's statement, made at the 2010 hearing, that she

---

[4]    The Commissioner published SSR 96-7p in part "to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."

"was fired from her previous job as a receptionist due to mood swings and her inability to be a good 'people person.'" Tr. 432I. Second, ALJ Mauer found that Ms. Spelatz's "pain symptoms are not as disabling as she alleges." Tr. 432J. Ms. Spelatz argues that the ALJ's reasons for making these findings are not clear and convincing. Pl.'s Br. 25. The court disagrees and concludes that ALJ Mauer's two primary credibility findings are supported by specific, clear, and convincing reasons.

ALJ Mauer first addressed Ms. Spelatz's testimony, made during the 2010 hearing, that she "was fired from her previous job as a receptionist due to mood swings and her inability to be a good 'people person.'" Tr. 432I. ALJ Mauer rejected this testimony because it was "offered for the first time" at the third hearing. During her first hearing in 2004, Ms. Spelatz testified that she left her job as a receptionist because she "wasn't needed any more." Tr. 394. ALJ Mauer also noted that in "previous hearings, [Ms. Spelatz] has indicated that she is incapable of full-time work due to pain symptoms[.]" Tr. 432I. The identification of prior inconsistent statements provides a sufficient reason to discredit a claimant's testimony. *Smolen*, 80 F.3d at 1284. ALJ Mauer did not err in discrediting Ms. Spelatz's 2010 hearing testimony.

ALJ Mauer next addressed Ms. Spelatz's pain symptoms testimony. ALJ Mauer provided several specific, clear and convincing reasons to find that Ms. Spelatz's "pain symptoms are not as disabling as she alleges." Tr. 432J. First, ALJ Mauer explained that Ms. Spelatz's "subjective complaints are not fully supported by the" record. Tr. 432I. In particular, ALJ Mauer cited Dr. Keiper's findings that Ms. Spelatz had a full range of motion, only slight degeneration in her lumbar spine discs, and was not disabled based on his assessment. Tr. 432J. Next, she observed that Ms. Spelatz "was able to cope with her pain symptoms without any prescription

Page 31 – OPINION AND ORDER

medication[.]" Tr. 432J. Finally, ALJ Mauer noted that Dr. Schepergerdes recommended relatively conservative treatment for Ms. Spelatz's pain, including over-the-counter medication and massage. Tr. 432J. These reasons are consistent with the credibility evaluation tools set forth in SSR 96-7p and Ninth Circuit case law. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (evidence that claimant pursued a conservative course of treatment for alleged pain is sufficient to discount claimant's testimony).

Ms. Spelatz also contends that ALJ Mauer "erred in relying on the lack of objective medical evidence regarding the severity of [her] pain." Pl.'s Br. 26. Ms. Spelatz is correct that an ALJ may not discredit a claimant's testimony based *solely* on a lack of objective medical evidence. *See Lester*, 81 F.3d at 834 (quoted above); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (*en banc*) ("the adjudicator may not discredit a claimant's testimony of pain . . . *solely* because the degree of pain alleged by the claimant is not supported by objective medical evidence") (emphasis added); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (that "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms *merely* because they are unsupported by objective medical evidence") (emphasis added). The Ninth Circuit has never held, however, that an ALJ may not cite a dearth of objective medical evidence as one factor among others suggesting that a claimant's testimony is not credible: "Although lack of medical evidence cannot form the *sole* basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (emphasis added). ALJ Mauer did not err when she cited the lack of medical evidence as one of several reasons to discount Ms. Spelatz's pain testimony.

ALJ Mauer correctly applied the regulations and this circuit's case law to discredit

Ms. Spelatz's 2010 hearing testimony and her subjective pain testimony. One statement in ALJ Mauer's decision, however, may be too broad. In introducing her discussion of Ms. Spelatz's pain testimony, ALJ Mauer wrote that Ms. Spelatz's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 432I. ALJ Mauer does not specifically identify which of Ms. Spelatz's many symptoms she is addressing in this statement. If, as seems likely based on the subsequent discussion, ALJ Mauer means only that Ms. Spelatz's pain testimony is not credible, this statement is a permissible introduction to that discussion. If, on the other hand, this statement is intended as a general finding that rejects all of Ms. Spelatz's symptom testimony, including her testimony regarding symptoms other than pain, such as fatigue and anxiety, it is impermissibly broad. Ninth Circuit case law and SSR 96-7p do not permit such general credibility findings. *Lester*, 81 F.3d at 834 ("General findings are insufficient"); SSR 96-7p ("It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). Instead, the ALJ must "specifically identify the testimony she or he finds not to be credible[.]" *Holohan*, 246 F.3d at 1208. On remand, the agency should clarify the extent of its credibility findings.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 33 – OPINION AND ORDER

## IV. CONCLUSION

The Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings consistent with instructions herein.

IT IS SO ORDERED.

Dated this _28ᵗʰ_ day of September, 2011

Michael H. Simon
United States District Judge